IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRUCE ALLEN SEWARD,

                    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

OPINION AND ORDER

17-cv-131-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Bruce Allen Seward seeks judicial review of a final decision of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, which denied his application for Social Security Disability Insurance Benefits and Supplemental Security Income. On January 17, 2018, the court held oral argument regarding claimant's two bases for reversal: (1) that the RFC finding was unsupported by substantial evidence; and (2) that the RFC finding relied on a flawed determination of Seward's credibility. For the reasons provided below, the court will affirm the Commissioner's determination, enter judgment in defendant's favor, and close this case.

BACKGROUND

**A. Claimant**

Seward was 54 at the time of his hearing and had experienced numerous medical issues, including most prominently a history of severe back problems. He claimed disability on the basis of shoulder problems, numbness in his legs, arthritis, degenerative disk disease,

lower back pain, diabetes, high blood pressure and eye problems. (AR 23.)[1] At the time of his hearing, Seward had past relevant work as a clerk, maintenance worker and kitchen helper.

### B. Medical Record

Seward's chronic back pain began with an incident during his military service in 1987. (AR 23.) In 2009, he underwent a discogram correlated at the L3-L4 and L5-S1, but not L4-L5, for reproducing his back pain. (*Id*.)[2] After attempting a variety of treatments, Seward exacerbated his back condition with a fall, and he was referred for an osteopathic assessment in March 2013. (*Id*.) Several back problems were then discovered through an MRI. (*Id*.) After another MRI in April of 2014 revealed worsening disk protrusion at L5-S1, Seward underwent a L5-S1 diskectomy in September 2014. (*Id*.)

Two months after Seward's surgery, he reported a ninety-percent improvement in his condition, at which time his treating physician advised that he could return to work with a permanent twenty-five pound restriction. (*Id*.) By the time of his hearing in

---

[1] The administrative record is available at dkt. #7.

[2] A discogram (or diskogram) may help determine if an abnormal spinal disk is causing pain.

> Spinal disks are sponge-like cushions between the bones (vertebrae) of the spine. During a discogram, dye is injected into the soft center of one or more disks. The injection sometimes reproduces your back pain . . . . However, disks that show signs of wear and tear don't always cause symptoms, so the usefulness of a discogram is controversial.

*Discogram*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/discogram/about/pac-20393818 (last visited Mar. 31, 2019).

February 11, 2016, however, Seward complained that his back problems were worsening and had become disabling.

### C. ALJ's Decision

Following the evidentiary hearing, the ALJ issued an opinion dated August 11, 2016.[3] While the ALJ ultimately concluded that Seward was not disabled, he did find that Seward's "degenerative disk disease and degenerative joint disease of the right shoulder" were severe impairments under the Social Security Administration's five-step evaluation process for determining disability. (AR 21.) At the same time, the ALJ did not find any of the other diagnoses in the record to be severe impairments under the Act, including diabetes, gastro-esophageal reflux disease and obesity. (AR 21-22.) Relying on the assessments of state agency psychological consultants, the ALJ also found that Seward did not have a severe mental impairment. (AR 22.)

In particular, despite severe impairments of degenerative disk and joint disease, the ALJ found that Seward possessed the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b). (AR 22.) This finding resulted from a variety of restrictions, including limits on pushing and pulling, the ability to stand or sit at will, and the need to be off-task up to ten percent of the time outside of scheduled breaks. (*Id.*) His RFC finding also necessitated an adverse credibility determination of Seward's subjective testimony that his symptoms were of a great enough severity to prevent him from functioning in a routine work setting. (AR 23.)

---

[3] At the hearing, the alleged onset date of disability was changed to June 1, 2012.

The ALJ gave little weight to a form prepared by a nurse practitioner indicating Seward suffered from a permanent disability on the ground that it was not a full functional analysis, did not apply Social Security Act standards, and was not considered an acceptable source under regulatory guidance. (AR 24.) Conversely, the ALJ gave "great weight" to the assessments of two state agency medical consultants, both of whom found that Seward was able to perform light work. (*Id.*) Because these evaluations occurred before a 2014 MRI revealed worsening conditions in Seward's back and his subsequent surgery, the ALJ included additional restrictions based on the expanded record, which included an opinion from a treating physician after the operation. (*Id.*) Finally, after concluding that Seward could not perform his past relevant work, the ALJ found that sufficient work still existed for Seward in the national economy as a counter attendant, office helper, and packager. (AR 26.)

OPINION

Seward raises two, specific challenges on appeal: (1) the RFC finding was unsupported by substantial evidence; and (2) the RFC finding relied on a flawed determination of Seward's credibility. The court addresses each in turn.

I. **The RFC Finding and Substantial Evidence**

When this court reviews a final decision under 42 U.S.C. § 405(g), the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Substantial evidence requires more than a "mere scintilla" of evidence; instead, it requires "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The ALJ conducted a careful analysis of the record in determining that Seward was not disabled during the disputed period. Of particular importance to the ALJ were the evaluations of state agency reviewing physicians, Drs. Khorshidi and Chan, whose opinions he found to be supported by and consistent with the weight of medical evidence. (AR 24.) In response, plaintiff argues that these opinions should have received less weight, coming as they did *before* the April 2014 low spine MRI, which showed Seward's back condition had worsened and required a diskectomy operation.

At the time of the hearing, however, the ALJ considered evidence regarding both the MRI and resulting surgery, crediting Seward's post-operation statement that he felt ninety-percent better, as well as the evaluation of another treating physician, Dr. Stevens, who found that Seward could soon return to work with a 25-pound lifting restriction. (AR 23.) Nor did Seward advance evidence that either his MRI or subsequent operation undermined the evaluations of Drs. Khorshidi and Chan in some material respect. Moreover, the ALJ accommodated Seward's claim that his condition worsened by giving him a maximum lifting restriction of 20 pounds occasionally and only 10 pounds frequently, which is more protective than the 25-pound restriction proposed by Dr. Stevens. (AR 22.) Absent evidence undermining the ALJ's finding that neither the MRI nor resulting surgery were likely to change Seward's RFC, this court has no reason to remand on this basis. To the contrary, during oral argument, counsel for plaintiff acknowledged that the ALJ's decision would, in his view, be supported by substantial evidence if not for these developments.

## II. The RFC Finding and Seward's Credibility

Because an ALJ is well-placed to determine the credibility of a witness, a court "will not overturn an ALJ's credibility determination unless it is patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (internal quotation marks omitted). Consequently, "[t]his court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding." *Id*. at 505.

In rejecting Seward's claim that his impairments prevented him from functioning appropriately in a routine work setting in particular, the ALJ found "[a]fter careful consideration of the evidence, [that] the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 23.) Of particular importance was the fact that Seward himself reported ninety-percent improvement after his surgery and was told by his treating physician that he could return to work with a permanent twenty-five pound restriction. (*Id*.) The ALJ also noted that Seward was able to function in a variety of non-work activities such as cooking, doing laundry, minor household repairs, and managing finances. (AR 24.) This reasoning combined with the ALJ's weighing of the objective medical evidence in the record was not "patently wrong," and the court will, therefore, not disturb this credibility determination.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Bruce Allen Seward's application for disability insurance benefits and supplemental security income is AFFIRMED. Consequently, plaintiff's motion for summary judgment (dkt. #8) is DENIED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 31st day of March, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge